| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO<br><br>Court Address:<br>1437 Bannock St.<br>Denver, CO 80202 | DATE FILED: May 3, 2018 1:22 PM<br>FILING ID: 4BB9DA59BBCBE<br>CASE NUMBER: 2018CV31632 |
| Plaintiff: **ABRIL ANCHONDO-GALAVIZ**<br><br>v.<br><br>Defendant: **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | ▲COURT USE ONLY▲ |
| *Attorneys for Plaintiff:*<br>Marco F. Bendinelli (#28425)<br>Jared J. Mazzei (#50758)<br>BENDINELLI LAW FIRM, P.C.<br>9035 Wadsworth Pkwy., Suite 4000<br>Westminster, CO 80021<br>Phone Number: 303.940.9900<br>Fax Number:   303.940.9933<br>Email: MFB@COLawFirm.com; JJM@COLawFirm.com | Case No:<br><br>Division: |

## COMPLAINT AND JURY DEMAND

Plaintiff, Abril Anchondo-Galaviz ("Plaintiff") by and through her attorneys, the Bendinelli Law Firm, P.C., for her Complaint against Defendant, State Farm Mutual Automobile Insurance Company ("Defendant"), a corporation, states and alleges the following:

### INTRODUCTION

1. Plaintiff was injured on February 27, 2013, when David Johnson (hereinafter "Tortfeasor") turned into oncoming traffic, colliding with Plaintiff's vehicle. (This event hereinafter referred to as the "Incident").

2. At the time of the Incident, Plaintiff resided at 14021 East Quinn Circle, Aurora, CO 80015.

3. Defendant is a Foreign Corporation, registered to conduct business in the State of Colorado.

4. Defendant's registered agent in Colorado is Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120.


EXHIBIT A

5. Defendant's principle office street address is 1555 Promontory Circle, Greeley, CO 80638-0001.

6. The Tortfeasor's negligent operation of his motor vehicle caused the Incident.

7. Plaintiff's date of birth is April 24, 1976.

8. At the time of the Incident, Plaintiff was 37 years old.

9. Pursuant to C.R.S. § 13-25-103, Plaintiff had a life expectancy of 41.6 additional years at the time of the incident.

10. The Incident directly and proximately caused Plaintiff to suffer multiple serious injuries, damages and losses.

11. As a direct and reasonably foreseeable result of the Tortfeasor's negligence, Plaintiff has suffered and will suffer economic damages, non-economic damages, and damages for physical impairment and/or disfigurement.

## PERSONAL JURISDICTION

12. Pursuant to C.R.S. § 13-1-124(1)(a), this Court has personal jurisdiction over Defendant because Defendant transacts business in Colorado.

13. Pursuant to C.R.S. § 13-1-124(1)(d), this Court has personal jurisdiction over Defendant because Defendant contracted to insure Plaintiff and her property, both located within Colorado at the time of contracting.

## VENUE

14. Pursuant to C.R.C.P. 98(c)(1), venue is proper in the District Court for the County of Denver, because Defendant is a nonresident of the state of Colorado and Denver County is the county designated in this Complaint.

## GENERAL ALLEGATIONS

15. At the time of the Incident, an insurance contract known as Policy Number 206 3169-B11-06A (hereinafter "Policy") was in effect between the Plaintiff and the Defendant.

16. Defendant's Policy included provisions for uninsured/underinsured motorist coverage for which Plaintiff paid premiums, and pursuant to which Defendant agreed to provide coverage for any damages a tortfeasor would be legally responsible to pay in excess of any insurance coverage the tortfeasor may have had in effect.

17. Defendant's Policy provided $100,000 in uninsured/underinsured motorist coverage.

18. Defendant's Policy provided $5,000 in Medical Payments coverage.

19. Plaintiff's medical bills, alone, totaled approximately $27,000.

20. At the time of the Incident, the Tortfeasor carried $25,000 in Bodily Injury Insurance Coverage with Farmers Insurance, which was offered to Plaintiff.

21. As a result of the Incident, Plaintiff was legally entitled to collect an amount of damages from the Tortfeasor that exceeded $25,000.

22. On March 28, 2016, prior to accepting those limits and releasing the tortfeasor, Plaintiff sought permission to do so from Defendant.

23. Plaintiff received the $25,000 Bodily Injury limits from Farmers Insurance on May 10, 2016.

24. Defendant granted Plaintiff permission to accept the $25,000 Bodily Injury limits on May 26, 2016.

25. On May 2, 2016, Plaintiff sent Defendant a request for her UIM benefits.

26. On June 14, 2016, Plaintiff sent a second request to Defendant for her UIM benefits and an evaluation of Plaintiff's claim.

27. On July 5, 2016, Plaintiff sent a third request for an evaluation of Plaintiff's claim.

28. On July 20, 2016, Plaintiff sent a fourth request for an evaluation of Plaintiff's claim.

29. On July 22, 2016, Defendant sent its first offer of UIM benefits in the amount of $23,416.15, which included a deduction of $25,000 from the Bodily Injury limits as well as a deduction of $5,000 medical payment benefits.

30. This offer of benefits did not include a breakdown or explanation of how Defendant evaluated Plaintiff's claim for UIM benefits in the amount of $23,416.15.

31. On August 1, 2016, after speaking with Defendant over the phone, Plaintiff sent a letter to Defendant requesting Defendant's policy limits in light of the fact that Plaintiff would need continual future treatment in the form of Radiofrequency Medial Branch Neurotomies ("RF").

32. This letter contained medical literature on the reasonableness and necessity of that future treatment.

33. On August 9, 2016, Defendant responded to Plaintiff to request medical records, claiming that Defendant was not in possession of any past RF procedure records.

34. On September 15, 2016, Plaintiff responded to Defendant and provided another copy of the medical records that Plaintiff had sent in her original May 2, 2016, request for benefits.

35. On October 13, 2016, Defendant sent Plaintiff a new offer of benefits in the amount of $27,500.

36. Plaintiff responded to Defendant on October 25, 2016, with a request for a breakdown of Defendant's evaluation, and whether or not Defendant had considered that RF procedures need to be repeated every 12-24 months for the rest of Plaintiff's lifetime.

37. On November 11, 2016, Plaintiff sent Defendant another request for a breakdown of its evaluation.

38. On December 6, 2016, Defendant responded to Plaintiff with an increased offer of $32,500, however, Defendant did not provide the requested evaluation.

39. On December 9, 2016, Plaintiff sent Defendant a third request for a breakdown of its evaluation.

40. On December 27, 2016, Plaintiff sent Defendant a fourth request for a breakdown of its evaluation.

41. Defendant responded to Plaintiff's requests on January 5, 2017, stating that Defendant considered the need for future RF procedures and reiterated its offer of $32,500.

42. Plaintiff underwent additional treatment on November 9, 2017, and February 19, 2018.

43. On March 23, 2018, Plaintiff sent medical records to Defendant outlining the recent treatment.

44. In this letter, Plaintiff requested her UIM policy limits in light of the fact that the recent treatment further supported her future economic damages claim.

45. Defendant has yet to respond or re-evaluate Plaintiff's claim.

46. Defendant has never added the $5,000 medical payments deduction back into its evaluation.

47. Plaintiff has yet to receive the $32,500.00 as the undisputed amount of her UIM claim that she was owed as of December 6, 2016.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

48. Plaintiff hereby incorporates all of the foregoing paragraphs.

49. Plaintiff and Defendant entered into an insurance contract known as Policy Number 206 3169-B11-06A.

50. Pursuant to that contract, Plaintiff paid premiums to Defendant in consideration for insurance coverage provided by Defendant, which included benefits for uninsured/underinsured motorist coverage.

51. Plaintiff substantially performed her part of the contract by paying her insurance premiums.

52. The condition precedent for Plaintiff to access her uninsured/underinsured motorist benefits under the contract was triggered when the Tortfeasor was underinsured relative to the damages caused to Plaintiff by the Incident.

53. Defendant failed to provide the contracted-for benefits associated with Plaintiff's underinsured motorist coverages, in breach of the contract between Plaintiff and Defendant.

54. Defendant failed to tender the undisputed amount of the underinsured motorist claim, in breach of the contract between Plaintiff and Defendant.

55. As a direct and proximate result of Defendant's breach of the insurance contract, Plaintiff suffered, and will continue to suffer, general and special damages.

## SECOND CLAIM FOR RELIEF
### (Common Law Bad Faith Breach of Insurance Contract)

56. Plaintiff hereby incorporates all of the foregoing paragraphs.

57. Defendant entered into a contract with Plaintiff by means of the Policy, in part to provide underinsured motorist bodily injury coverage to Plaintiff in exchange for Plaintiff's payment of policy premiums.

58. Defendant unreasonably refused to acknowledge full coverage of Plaintiff under the insurance contract between Defendant and Plaintiff.

59. Defendant acted unreasonably by failing to acknowledge and act promptly in response to communications with respect to the claim that arose under the insurance contract between Plaintiff and Defendant.

60. Defendant acted unreasonably in refusing to pay claims within a reasonable time.

61. Defendant acted unreasonably in not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability had become reasonably clear.

62. Defendant acted unreasonably by discounting Plaintiff's medical payment benefits, contrary to Colorado Law.

63. Defendant acted unreasonably in not tendering the undisputed amount of the underinsured motorist claim to Plaintiff.

64. Defendant's conduct was unreasonable because a reasonably careful insurer would not have taken the actions of Defendant.

65. Defendant knew that its conduct was unreasonable, or the Defendant acted recklessly in taking its actions.

66. Defendant recklessly disregarded the unreasonableness of its conduct referenced, because it acted with knowledge of facts that indicated that such conduct lacked a reasonable basis.

67. Defendant recklessly disregarded the unreasonableness of its conduct referenced, because it acted with deliberate indifference to information concerning the claim.

68. Defendant willfully engaged in said conduct.

69. Defendant's conduct contributed to, and caused, its delay and denial of Plaintiff's full benefits owed under the underinsured motorist claim.

70. As a direct and proximate cause of Defendant's violations of C.R.S. § 10-3-1104, Plaintiff suffered, and will continue to suffer, general and special damages.

71. As a direct and reasonably foreseeable result of Defendant's bad faith breach of the insurance contract, Plaintiff has suffered, and will continue to suffer general and special damages.

### THIRD CLAIM FOR RELIEF
### (C.R.S. § 10-3-1115 Unreasonable Delay & Denial)

72. Plaintiff hereby incorporates all the foregoing paragraphs.

73. Defendant entered into a contract with Plaintiff by means of the Policy, in part to provide underinsured motorist bodily injury coverage to Plaintiff in exchange for Plaintiff's payment of policy premiums.

74. Plaintiff made a claim for her underinsured motorist benefits to be paid from Defendant.

75. Defendant unreasonably delayed and denied full payment of those benefits.

76. Defendant's delay and denial was without a reasonable basis.

77. Defendant investigated Plaintiff's underinsured motorist claim and provided Plaintiff with an undisputed evaluation of $32,500.00.

78. Defendant unreasonably delayed and denied payment of the undisputed amount.

79. Defendant's delay and denial was without a reasonable basis.

80. As a direct and proximate result of Defendant's unreasonable delay and denial of the insurance contract, Plaintiff has suffered, and will continue to suffer general and special damages.

## REQUEST FOR TRIAL BY JURY

81. Plaintiff hereby incorporates all of the foregoing paragraphs.

82. PLAINTIFF DEMANDS TRIAL BY JURY on all of his claims set forth above.

WHEREFORE, Plaintiff asks that judgment be entered in her favor and against Defendant State Farm Mutual Automobile Insurance Company, for all available relief, including, but not limited to, economic damages, non-economic damages, and damages for physical impairment and/or disfigurement, as well as interest, costs, attorney's fees, and any other relief deemed proper.

Dated: May 3, 2018.

BENDINELLI LAW FIRM, P.C.
This pleading is filed electronically pursuant to C.R.C.P. 121 § 1-26. The original signed pleading is in counsel's file.

By:  */s/ Jared J. Mazzei*
Marco F. Bendinelli (#28425)
Jared J. Mazzei (#50758)
*Attorneys for Plaintiff*

Plaintiff's Address
14021 East Quinn Circle
Aurora, CO 80015