**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-01322-JLK-NYW

ABRIL ANCHONDO-GALAVIZ,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.

---

**ORDER ON OUTSTANDING MOTIONS**

---

Magistrate Judge Nina Y. Wang

      Pending before the court are the following discovery motions:

(1)      Motion to Compel Discovery Responses by Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm") [#29, filed March 1, 2019];

(2)      Defendant's Motion to Compel Rule 35 Examination ("Motion to Compel IME") [#30, filed March 11, 2019];

(3)      Defendant's Motion for Extension of Time to File Expert Disclosures Pending an Order on State Farm's Motion to Compel a Rule 35 Examination ("Defendant's Motion for Extension of Time") [#31, filed March 11, 2019]; and

(4)    Plaintiff's Motion to Quash Subpoena Duces Tecum Served on Marrick Medical and the Subpoena Duces Tecum Served on Vanston Masri, M.D. [sic][1] ("Motion to Quash") [#38, filed April 11, 2019]

(5)    Plaintiff's Motion for Disclosure [#61, #62 filed June 24, 2019];[2]

(6)    Defendant State Farm Mutual Automobile Insurance Company's Motion for Leave to File an Amended Response to Plaintiff's Motion for Summary Judgment To Comply With The Court's Pretrial Procedures ("Defendant's Motion to File Amended Response") [#67, filed July 5, 2019];

(7)    Defendant State Farm Mutual Automobile Insurance Company's Motion For Leave To File An Amended Response To Plaintiff's Motion For Summary Judgment To Include References To Previously Unavailable Exhibits ("Defendant's Motion to Supplement") [#68, filed July 5, 2019]; and

(8)    Defendant's Motion for Leave to Restrict Access to Documents Submitted for In Camera Review ("Defendant's Motion to Restrict") [#71, filed July 11, 2019].

These motions were referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b), the Order of Reference dated June 11, 2019 [#52], and the Memoranda dated June 17, 2019, June 26, 2019, and July 15, 2019 [#55, #60, #63, #72]. This court entertained oral argument on the first

---

[1] Though referred to as an "M.D." in the title of the filing, Plaintiff's expert disclosures identify Dr. Masri as a D.O. *Compare* [#38 at 1] *with* [#30-1 at 5].

[2] Plaintiff initially filed her Motion for Disclosure [#57, filed June 21, 2019], which was referred by Memorandum dated June 21, 2019 [#60]. Plaintiff then informed the court that she had inadvertently filed the incorrect exhibits, and re-filed the Motion for Disclosure as [#61, filed June 24, 2019]. The court struck the inapplicable restricted document [#58], but ordered the Clerk of the Court to maintain a Level 1 Restriction as they appeared produced pursuant to the Protective Order. *See e.g.* [#58-1]. The court now **DENIES AS MOOT** the Motion for Disclosure [#57].

four motions related to Marrick Medical and the IME during the Discovery Hearing on June 25, 2019 [#56; #64]. Having been fully advised of the premises, this court respectfully **ORDERS** that Defendant's Motion to Compel Discovery Responses be **GRANTED**; Defendant's Motion to Compel IME be **GRANTED**; Defendant's Motion for Extension of Time be **GRANTED**; and Plaintiff's Motion to Quash be **GRANTED IN PART and DENIED AS MOOT IN PART**. In addition, the court **DENIES** Plaintiff's Motion for Disclosure [#61, #62]; **GRANTS** Defendant's Motion to Restrict [#71]; and **DENIES** Defendant's Motion to File an Amended Response and **GRANTS IN PART and DENIES IN PART** Defendant's Motion to Supplement.

## BACKGROUND

Plaintiff Abril Anchondo-Galaviz ("Plaintiff" or "Ms. Anchondo-Galaviz") filed this action in Denver District Court on May 3, 2018, after being injured in an automobile collision on February 27, 2013. [#3 at ¶ 1]. At the time of the collision, the Tortfeasor had insurance coverage of $25,000 for bodily injury. [*Id.* at ¶ 20]. Plaintiff was insured under Policy No. 206 3169-B11-06A ("Policy") issued by State Farm. [*Id.* at ¶ 15]. Under the Policy, Ms. Anchondo-Galaviz carried $100,000 in uninsured/underinsured ("UI/UIM") motorist coverage and $5,000 in medical pay coverage. [*Id.* at ¶¶ 17, 18].

As a result of the collision, Ms. Anchondo-Galaviz, with State Farm's permission, accepted $25,000 for her bodily injury from the Tortfeasor. [*Id.* at ¶ 23]. Believing the value of her claim to exceed $25,000, Plaintiff requested UIM benefits on May 2, 2016. [*Id.* at ¶ 25]. On July 22, 2016, Defendant sent a first offer of UIM benefits in the amount of $23,416.15, which included a deduction of the $25,000 paid by the Tortfeasor and $5,000 for medical payment benefits. In the subsequent months, Plaintiff and Defendant engaged in correspondence regarding her UIM claim,

and Plaintiff underwent additional medical treatment. [*Id.* at ¶¶ 25–43]. On March 23, 2018, Plaintiff sent medical records to State Farm, and requested policy limits. [*Id.* at ¶¶ 43–44]. At the time of the filing of the Complaint, State Farm had not paid Plaintiff. [*Id.* at ¶ 47]. Ms. Anchondo-Galaviz asserts three claims: (1) breach of contract; (2) common law bad faith breach of contract; and (3) unreasonable delay and denial pursuant to Colo. Rev.Stat. § 10-3-1115 ("statutory bad faith"). [*Id.* at ¶¶ 48–80]. She seeks relief in the form of economic damages, non-economic damages, and damages for physical impairment and/or disfigurement, as well as interest, costs, and attorney's fees. [*Id.* at 7].

State Farm removed the action to the United States District Court for the District of Colorado on May 30, 2018. [#1]. It was originally assigned to, and proceeded before, the Honorable Richard P. Matsch. [#5]. Judge Matsch entered a Scheduling Order in this matter on August 27, 2018 that contemplated, *inter alia*, discovery to close on or before June 15, 2019; affirmative expert disclosures on or before February 15, 2019; "contradicting opinion witness[]" disclosures on or before March 15, 2019; and rebuttal expert disclosures on or before April 15, 2019. [#19 at 6]. The deadline for service of written discovery was set for May 1, 2019. [*Id.* at 7].

During the deposition of Plaintiff, Plaintiff testified that Marrick Medical Finance, LLC ("Marrick") paid for her most recent visit with her treating physician, Dr. Masri. [#29-1 at 42:15-17].[3] She further testified that after every doctor's appointment, Marrick called her for a "wellness

---

[3] For ease of reference for transcripts, the court uses the docket number assigned by its Electronic Court Filing ("ECF") system, and the page and line numbers from the original transcript.

check." [*Id.* at 42:18-43:2]. State Farm subsequently served the following Requests for Production

of documents ("RFP"):

> No. 1. Please produce all documents related to Marrick Medical Finance LLC's handling of or involvement in Plaintiff's treatment.

> No. 2. Please produce all communications between Plaintiff and/or her agents and Marrick Medical Finance LLC related to Plaintiff's medical treatment.

[#29 at 2; #29-2 at 1-2]. Plaintiff objected to these requests, contending that they were overly

broad, unduly burdensome, designed to harass the Plaintiff, and not reasonably calculated to lead

to admissible evidence because "[c]ollateral sources evidence is inadmissible and is not relevant

to the issues in this matter." [#29 at 2; #29-2 at 1]. Plaintiff further objected to RFP No. 2 by

asserting that "any responsive documents are protected by the attorney-client privilege and the

attorney work product doctrine." [#29 at 2; #29-2 at 2]. On March 1, 2019, State Farm filed its

Motion to Compel, seeking responses to RFP Nos. 1 and 2. [#29].

On March 11, 2019, after its unsuccessful attempt to negotiate a voluntary independent

medical evaluation ("IME") of Ms. Anchondo-Galaviz, State Farm filed its Motion to Compel

IME under Rule 35 of the Federal Rules of Civil Procedure. [#30]. State Farm also sought an

extension of its deadline to propound its contradicting expert witness reports to a time after the

IME. [#31].

On March 22, 2019, Defendant served Marrick a subpoena seeking contents of its file

related to Plaintiff, including medical records and payments. [#38]. Then, on March 29, 2019,

Defendant served Dr. Masri, a subpoena for records regarding Ms. Anchondo-Galaviz's medical

treatment as well as a deposition. [*Id.*]. Defendant's Motion to Quash followed on April 11, 2019.

[#38]. With these motions pending, Judge Matsch set a hearing for May 9, 2019, which was

subsequently vacated to be re-set.  [#41; #43].  At the time of Judge Matsch's passing, the motions

hearing had yet to be re-set.

This action was then re-assigned to the Honorable John L. Kane, who in turn, referred these

pending motions to the undersigned Magistrate Judge.  [#48; #52; #63].  On June 11, 2019, the

Parties filed a "First Stipulation to Extend Discovery," seeking to extend discovery for sixty days[4]

and informing the court that Plaintiff had withdrawn its objection to the subpoena directed to Dr.

Masri for documents and testimony.  [#53 at 2].  This court then convened a Discovery Conference

on June 26, 2019, during which it took oral argument as to the outstanding discovery disputes

[#64], and now proceeds with its analysis and rulings.

## LEGAL STANDARDS

### I.    Rule 26(b)(1)

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible

discovery here.  The Rule permits discovery regarding any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

In considering whether the discovery sought is proportional, the court weighs the importance of

the discovery to the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of discovery in resolving the

---

[4] Though filed as a Stipulation, neither the Federal Rules of Civil Procedure nor Local Rules of
Civil Practice for this District permit such an extension by agreement of the parties.  Fed. R. Civ.
P. 16(b); D.C.COLO.LCivR 6.1.  Though Plaintiff sought to withdraw its Motion to Amend Civil
Scheduling Order to Reflect 60-Day Extension of Discovery Cutoff [#47, filed May 13, 2019] in
favor of the Stipulation, this court granted that Motion on the record during the Discovery
Conference held on June 26, 2019, and extended the deadline for discovery to August 16, 2019.
[#64].

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

This definition of the permissible scope does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26, effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that parties and courts had incorrectly used the phrase to expand the scope of discovery to a point where the scope "might swallow any other limitation." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). Rather, the applicable test is whether the evidence sought is relevant to any party's claim or defense and proportional to the needs of the case, though the information sought need not be admissible to be relevant to a claim or defense. *Id.*; Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1). Generally, when discovery on its face appears to be relevant, the responding party bears the burden of establishing that the requested discovery does not fall within the scope of relevant evidence or is of such marginal relevance that the potential harm of discovery is outweighed by the benefit. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D.Colo.2004) (citations omitted). But when the relevance of a discovery request or device is not

apparent on the face of the request or device itself, the proponent of the discovery bears the burden

of making an initial showing of relevance.  *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–

WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

## II.     Rule 37

Pursuant to Rule 37(a)(1), a party may move for a court order compelling disclosure or discovery and must certify that she "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). A motion to compel may include a party's failure to produce documents requested pursuant to Rule 34. See Fed. R. Civ. P 37(a)(3)(B)(iv). "The party moving to compel discovery must prove that the opposing party's answers are incomplete[,]" and the "party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1)." *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D 561, 566 (D. Colo. 2010).

## II.     Rule 45

A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of those Rules. *Rice v. United States*, 164 F.R.D. 556, 556–57 (N.D. Okla. 1995). Accordingly, a subpoena is bound by the same standards that govern discovery between the parties, and, to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). On a timely motion, the court must quash or modify a subpoena that *inter alia*:   (1) fails to allow a reasonable time to comply; (2) requires the disclosure of privileged or other protected matter, if no exception or waiver applies; (3) subjects a person to undue burden; or (4) requires the disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B). Generally, "a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege

relating to the documents being sought[,]" or "upon a showing that there is a privacy interest applicable." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) (citations omitted) ("Absent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum"). "Objections unrelated to a claim of privilege or privacy interests are not proper bases upon which a party may quash a subpoena." *Cobbler Nevada, LLC v. Does*, No. 15-CV-02771-WYD-MEH, 2016 WL 300827, at *1 (D. Colo. Jan. 25, 2016) (citations omitted).

## ANALYSIS

### I.    Marrick Medical

Defendant's Motion to Compel Discovery Responses [#29] and Plaintiff's Motion to Quash [#38] both stem from a common issue:  whether Defendant can seek discovery from third party Marrick that provided funding for Plaintiff's medical treatment arising from the underlying collision and performed a "wellness check" after each of her medical appointments.  Defendant seeks documents and information relating to Marrick's handling or involvement in Plaintiff's treatment, any communications between Marrick and Ms. Anchondo-Galaviz, including medical records, bills, and summaries of payments made for benefits on behalf of Plaintiff.  *See* [#29-2 at 1-2; #38 at 2-3].  Based on the record before the court, it appears that Plaintiff has provided no responsive documents, and Marrick has not objected to or responded to the subpoena at all.[5]

---

[5] Plaintiff only partially objects to the subpoena, but argues that total non-compliance is justified because, although the court may modify a subpoena, a party is not so able and must either comply or object in full.  [#45 at 1–2].  This court respectfully disagrees with this interpretation of Rule 45.  Rule 45 expressly contemplates partial compliance with a subpoena pending resolution of a producing party's partial objection.  Rule 45(d)(2)(B) clearly refers to lodging objections to "any or all" of the requested materials, and as recognized by Plaintiff, contemplates that the court may modify, rather than quash, a subpoena.  Fed. R. Civ. P. 45(d)3)(A).

As an initial matter, the party seeking production has the burden of showing relevancy. *Chung v. Lamb*, No. 14-CV-03244-KLM, 2017 WL 10619941, at *3 (D. Colo. Oct. 24, 2017) (citing *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006)).  Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  State Farm argues that information regarding Plaintiff's treatment is relevant because Plaintiff testified that she has been treated for five years with no relief, leaving Defendant with the belief that "a significant portion" of the treatment has not been reasonable or necessary.  [#37 at 5].  Because Ms. Anchondo-Galaviz has put her physical condition at issue by seeking damages for UIM benefits for bodily injuries she alleges arises from the underlying collision, this court finds that discovery that yields information regarding Ms. Anchondo-Galaviz's claimed bodily injuries, her treatment for the injuries, and reasonable expenses for such treatment would generally be relevant.  *See Carbajal v. Warner*, No. 10–cv–02862–REB–KLM, 2013 WL 1129429, at *5 (D. Colo. Mar. 18, 2013).  But the inquiry under Rule 26(b)(1) does not end with relevance, and this court turns to considering Plaintiff's various objections to Defendant's Requests for Production and the subpoena to Marrick below.[6]

---

[6] Plaintiff also argued that the requests did not capture the financial records for Ms. Anchondo-Galaviz and were "overly broad" because "Marrick's 'involvement' in Plaintiff's claim could mean any number of things" and she was "unsure of how to even begin gathering documents responsive to this request."  [#32 at 2-3].  This court is not persuaded by these objections.  As written, this court interprets Request No. 1, which seeks "all" records related to the handling of Plaintiff's case, to include any documents reflecting the financial arrangements between Plaintiff and Marrick, or Marrick and Plaintiff's treating medical providers.  Rule 34 expressly only requires a party to produce documents within its possession, custody, and control, Fed. R. Civ. P. 34(a)(1), and State Farm has made no argument that the Rule requires Plaintiff to affirmatively seek information from Marrick other than what is readily available to her counsel through the Marrick portal.  [#37 at 3].  Therefore, any inquiry whether "Plaintiff need[s] to find and produce notes

*Defendant's Articulated Reasons for Discovery are Contradicted by the Medical Records.* Plaintiff contends that "[w]hile Defendant states that Plaintiff's treatment was ineffective, Defendant makes this bald assertion out of context of Plaintiff's full deposition testimony and in contradiction to the medical records." [#32 at 3]. Respectfully, this objection fails to address discoverability, but goes to the potential admissibility and weight of the evidence.

*Medical Liens.* Plaintiff asserts that medical liens are not relevant because the "Defendant is liable for the billed amount of Plaintiff's medical expenses," and "the existence of a lien does not affect the extent to which Defendant is liable for damages, and does not make more or less probable the amount of billed expenses, the true value of damages." [*Id.* at 7]. Plaintiff further argues that medical lien information is inadmissible under Rule 402 of the Federal Rules of Evidence as collateral to the issues of the trial. [*Id.*]. Defendant does not separately respond to this argument on Reply. *See generally* [#37]. It is not entirely clear that Defendant seeks to admit the fact or amount of any medical lien held by Marrick as to Ms. Anchondo-Galaviz, but to the extent State Farm is, this court agrees with Plaintiff that the existence and amount of a medical lien may not be admissible at trial. Nevertheless, Plaintiff's testimony and arguments about Marrick indicate that Marrick possesses more information than a typical lienholder, but also may have unredacted medical records and bills. [#38 at 3]. Therefore, this court finds that discovery is not prohibited simply because Marrick holds a medical lien as to Plaintiff.

---

made by Marrick's agents?" [*id.* at 2-3] or "[d]oes Defendant expect Plaintiff to have recorded all conversation she had with Marrick's agents?" [*id.* at 3] reflects a misunderstanding of the applicable Rule. Second, Plaintiff argues that Defendant's request to Plaintiff is better suited as a proper subpoena to Marrick. [*Id.* at 3]. But as evidenced by Plaintiff's Motion to Quash, Ms. Anchondo-Galaviz objects to any such subpoena as well. [#38]. Plaintiff also appears to have appropriately withdrawn her objection to the requests based on the attorney-client privilege. [#32 at 3].

*Collateral Source.* Plaintiff argues that medical liens are subject to exclusion under the collateral source rule. [*Id.* at 8]. Defendant contends that the collateral source rule does not pertain to discoverability, but instead addresses admissibility of certain evidence, and even if it could apply, Marrick is not a collateral source because it is not a payor of benefits under Colo. Rev. Stat. § 10-1-135. [*Id.* at 2].

Colorado's collateral source rule consists of two components: (1) a pre-verdict evidentiary component, as described by the common law and (2) a post-verdict setoff rule, codified at Colo. Rev. Stat. § 13-21-111.6. *See Wal-Mart Stores, Inc. v. Crossgrove*, 276 P.3d 562, 565 (Colo. 2012); *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 653 (Colo. 2012) (en banc). Under the pre-evidentiary component of the collateral source rule, a trial court must exclude evidence of amounts paid for medical services to a plaintiff by a third-party collateral source to prevent the factfinder from improperly reducing the damages award. *See Crossgrove*, 276 P.3d at 567. A third party is considered a collateral source if it is wholly independent of the tortfeasor to which the tortfeasor has not contributed. *Id.* (citations omitted).

If Marrick qualifies as a collateral source, then evidence of what it paid for Ms. Anchondo-Galaviz's medical expenses would be inadmissible for the purpose of establishing reasonable value of the medical services:

> The pre-verdict evidentiary component of the collateral source rule prevails in collateral source cases to bar the admission of the amounts paid for medical services. Admitting amounts paid evidence for any purpose, **including the purpose of determining reasonable value**, in a collateral source case carries with it an unjustifiable risk that the jury will infer the existence of a collateral source—most commonly an insurer—from the evidence, and thereby improperly diminish plaintiff's damages award.

*See Crossgrove*, 276 P.3d at 567 (emphasis added).

As an initial matter, the court notes that the collateral source rule would only apply to discovery related to the payments associated with the medical treatments, but not to the substance of the treatment itself. In addition, this court agrees with Defendant that the collateral source rule is one of evidentiary admissibility, which is properly reserved for Judge Kane, rather than discovery and that Rule 26(b)(1) makes clear that evidence need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1). Nevertheless, relevance is not the only touchstone of Rule 26(b)(1); the court must also consider whether that discovery is proportional to the needs to the case. To the extent that Marrick is a collateral source, discovery regarding at least the amounts paid for medical treatment would not be proportional. *See Ortiviz v. Follin*, Case No. 16-cv-02559-MSK-MEH, 2017 WL 3085515, *3 (D. Colo. Jul. 20, 2017). But State Farm contends that Marrick does not qualify as a collateral source because it disclaims being a payor of medical treatment under Colo. Rev. Stat. §10-1-135. [#37 at 2]. Instead, upon information and belief, State Farm believes that Plaintiff is obligated to pay the full amount of her medical bills. Indeed, in Reply to the Motion to Quash, Plaintiff represents "[n]othing in Marrick Medical's agreement with Plaintiff provides any financing to Plaintiff. The agreement is simply terms under which Marrick will factor the medical receivables of the providers. It creates no obligation on the part of the Plaintiff, and no obligation on the part of Marrick Medical to provide any funding of any sort directly to Plaintiff or for the Plaintiff's medical bills." [#45 at 9]. And unlike other cases involving its arrangements, Marrick has not entered its appearance to explain its arrangement with Plaintiff or argue that it is not a collateral source.

Based on the record before it, and consistent with other federal and state courts within Colorado that have decided this issue, this court finds that there is, at least a fair basis, for finding

that Marrick is not a collateral source and therefore, discovery should be permitted. *See Ortiviz*, 2017 WL 3085515, at *3; *Smith v. Marten Transport, Ltd.*, 10-cv-00293-RBJ-KMT, ECF No. 65 (holding that the amount Marrick pays medical providers is not subject to the collateral source rule, because "[t]he plaintiffs are not even one penny partially indemnified on these medical bills"); *Lange v. McInnis*-Ortega, Case No. 2012CV2147, Order on Plaintiff's Motions in Limine (Denver Dist. Ct. Jan 1, 2015) (Attach 1). Indeed, without production of the underlying financial documents reflecting the arrangement between this plaintiff and Marrick, it is difficult to ascertain how Judge Kane can independently ascertain whether the collateral source rule applies, to the extent that he needs information in addition to the representations already made by Plaintiff. Therefore, this court finds that the collateral source rule does not prohibit discovery of the information sought.

*Work Product Doctrine.* As to communications between Plaintiff's attorneys and Marrick and "lien documentation," Plaintiff also argues that the work product doctrine precludes Request for Production Nos. 1 and 2 because they were created in anticipation of litigation and reflect counsel's mental impressions. [#32 at 4, 9]. State Farm contends that work-product does not apply, because Marrick is a third-party who is not an agent of Plaintiff or her counsel for the purposes of this litigation and because the communications were not confidential. [*Id.* at 4; #37 at 4].

"[T]he work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (citation and quotation omitted). Under Rule 26(b)(3), the work product doctrine protects confidential materials prepared in anticipation of litigation or for trial. *See Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993); *L-3 Comm'ns*

*Corp. v. Jaxon Eng'g & Maintenance, Inc.*, No. 10-cv-02868-MSK-KMT, 2015 WL 183303, \*5
(D. Colo. 2014). Unlike the attorney-client privilege, however, work product immunity is not
automatically waived by any disclosure to a third party. *In re Sealed Case*, 676 F.2d 793, 802-10
(D.D.C. 1982). The general standard for determining whether protected work product must be
disclosed is where (1) the materials are otherwise discoverable under Rule 26(b)(1); and (2) the
party shows that it has substantial need for the materials to prepare its case and cannot, without
undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3). If
disclosure of work product is ordered by the court, the court must protect against the disclosure of
the mental impressions, conclusions, opinions, or legal theories of a party seeking to invoke work
product immunity bears the burden of establishing that it applies.  *Barclaysamerican Corp. v.
Kane,* 746 F.2d 653, 656 (10th Cir. 1984).

       The court first notes that contrary to Defendant's argument, Plaintiff does not argue, nor
could she, that her medical records are protected from disclosure by the work product doctrine.
*Compare* [#37 at 5 ¶ 16] *with* [#32 at 4, 9]. Similarly, this court finds that "lien documentation,"
including agreements with Ms. Anchondo-Galaviz or communications between Marrick and
Plaintiff's treatment providers, may not be fairly characterized as work product "created in
anticipation of litigation."  Indeed, there is no indication that Marrick is serving as an agent for
Ms. Anchondo-Galaviz for the purpose of preparing for litigation so that its own documents,
evaluations or summaries (internal or otherwise) would be protected and the provisions of the
agreements between other individuals and Marrick are readily found in the public domain. *See
Ortiviz*, 2017 WL 3085515, at \*3; *Lange v. McInnis*-Ortega, Case No. 2012CV2147, Order on
Plaintiff's Motions in Limine (Jan 1, 2015) (Attach 1).  But to the extent that Plaintiff's counsel

shared attorney work product with Marrick to establish the business relationship [#32 at 4, 9], such communications could be considered protected by the work product doctrine depending upon the circumstances. The dilemma facing this court, however, is that neither Plaintiff nor Marrick has provided a sufficient privilege log as required by Rules 34 and 45 so that this court may determine that a particular document is covered by the work product doctrine. Plaintiff's privilege log reflects two entries that are described as "email correspondence," but does not identify the originating party, the receiving party, and a general description of the communications adequate for the court to determine the appropriateness of the invocation of the work product doctrine. [#38-1 at 15, 16]. Accordingly, to the extent that Plaintiff or Marrick continues to withhold documents based on the work product doctrine, she and Marrick must reflect them in respective, compliant privilege logs that State Farm and this court can review for adequacy and propriety.

**_Physician-Patient Privilege._** In moving to quash Defendant's subpoena directed to Marrick, Plaintiff argues that her unredacted medical records and other information contained in such records, such as social security numbers, personal information, and insurance information, are privileged. [#38 at 3-4]. Defendant argues that Ms. Achondo-Galaviz has waived her privilege by providing such information to Marrick. [#42 at 7-8]. In Reply, Plaintiff contends that Marrick obtained her unredacted medical records using HIPAA compliant releases, thereby preserving her physician-patient privilege. [#45 at 11].

In a diversity case such as this one, applicable privileges are governed by the state law of the forum. _Motley v. Marathon Oil Co._, 71 F.3d 1547, 1551 (10th Cir. 1995) (citing Fed. R. Evid. 501; _White v. American Airlines, Inc._, 915 F.2d 1414, 1424 (10th Cir. 1990)). Under Colorado law:

> a physician, surgeon, or registered professional nurse duly authorized to practice
> his profession pursuant to the laws of this state or any other state shall not be
> examined without the consent of his patient as to any information acquired in
> attending the patient which was necessary to enable him to prescribe or act for the
> patient.

Colo. Rev. § 13–90–107(d), C.R.S. (2004). This privilege applies "equally to in-court testimony and to pretrial discovery of information." *Weil v. Dillon Companies, Inc*., 109 P.3d 127, 129 (Colo. 2005). "Taken together, C.R.C.P. 26(b)(1) and section 13–90–107(d) establish that, even if relevant to the subject matter involved in the pending action, a party is not necessarily entitled to discovery of information from a physician relating to the treatment of a patient." *Alcon v. Spicer*, 113 P.3d 735, 738 (Colo. 2005), as modified (June 27, 2005). The purpose of the privilege is to protect a patient's ability to be candid with her physician and secure the medical treatment necessary without the embarrassment or humiliation disclosure might cause. *Id*. at 738.

But like most privileges, the physician-patient privilege is not absolute and can be waived, either expressly or impliedly. "[P]rivilege holders inject their physical or mental condition into a case as the basis of a claim when they utilize the condition as the predicate for some form of judicial relief." *Gadeco, LLC v. Grynberg*, 415 P.3d 323, 326 (Colo. 2018) (internal quotations omitted). Thus ordinarily, when a party has put a particular physical condition at issue, such as through claiming a specific personal injury and/or damages for such injury, she has waived her physician-patient privilege as to the treatment related to such conditions but maintains the privilege for medical records wholly unrelated to her injuries and damages claimed. *Alcon*, 113 P.3d at 739. Here, Plaintiff seeks to withhold a certain subset of medical information provided to Marrick from physicians treating her for injuries for which she seeks compensation in this action, relying on residual privilege. *See e.g.* [#38-1 at 7, 8, 9, 10]. State Farm contends privilege has been waived,

even residual privilege, as to any medical information provided to Marrick, a third party. [#42 at 8]. Once Plaintiff establishes the privilege applies, the burden shifts to State Farm to demonstrate the privilege has been waived. *See Alcon*, 113 P.3d at 739.

An individual's voluntary disclosure of medical information to a third-party may act as a waiver. *Hartmann v. Nordin*, 147 P.3d 43, 49 (Colo. 2006) ("[T]he physician-patient privilege protects those relationships specified by statute, it does not protect medical information that a party transmits outside of the statute's specified relationships."); *Conyers v. Massa*, 512 P.2d 283, 284 (Colo. App. 1973) (finding no privilege when plaintiff presented herself to physician for purpose of transmitting information to third party or waiver of the physician-patient privilege after plaintiff disclosed her medical information to the tortfeasor's medical examiner). But in some cases, disclosure to a third party does not constitute waiver. Indeed, Colorado courts have held that when an insured discloses her medical information to her insurance company for the purposes of securing benefits, a waiver does not occur. *Devenyns v. Hartig*, 983 P.2d 63, 66 (Colo. App. 1998) ("We conclude that, as a matter of law, the physician-patient privilege is not waived simply because an insured party has released medical records to his or her PIP insurance carrier for payment of medical expenses" because "[a] person injured in an automobile accident does not have a choice, but rather is required to submit medical records to an insurer in order to receive payment for medical expenses incurred from the accident.").

Using these principles and the purpose of the physician-patient privilege as guideposts, based on the representations made by Plaintiff, this court finds that she has waived the physician-patient privilege for all medical records, in whatever form, provided to Marrick. First, Plaintiff represents that her relationship with Marrick is strictly a financial one: "[i]t creates no obligation

on the part of the Plaintiff, and no obligation on the part of Marrick Medical to provide any funding of any sort directly to Plaintiff or for the Plaintiff's medical bills."  [#45 at 10].  Second, unlike *Devenyns* or *Alcon,* Plaintiff <u>voluntarily</u> provided Marrick with a HIPAA authorization to obtain her records directly from the medical providers, despite having no "condition in the agreement that Plaintiff give[] Marrick access to her medical records." [*Id.* at 11].  The authorization is an express waiver of the physician-patient privilege as to those records, and Plaintiff appears to have not taken any steps to redact material to preserve any residual privilege prior to giving access to Marrick. Nor is it clear that permitting a patient to provide her medical records to a third-party factoring company advances the purpose of the physician-patient privilege, i.e., "to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused" by the disclosure of that information.  *Weil*, 109 P.3d at 129. Accordingly, this court finds that the physician-patient privilege does not preclude discovery of Plaintiff's unredacted medical records from Marrick.[7]

Finally, Plaintiff also objects to the production of documents that reflect personal information, including her social security number, telephone number and insurance information, based on privilege.  [#38 at 3-4].  This court respectfully disagrees that this information is privileged.  *Hartmann v. Nordin*, 147 P.3d 43, 50 (Colo. 2006) (observing that the physician-

---

[7] State Farm also contends that it cannot be required to analyze for privilege within the records of providers on a word by word basis, but is instead entitled to all records provided Marrick.  [*Id.* at 9].  To the extent that State Farm suggests that it is entitled to all records for any treating physician who provided care to Ms. Anchondo-Galaviz for her claimed injuries, the Colorado Supreme Court has soundly rejected that proposition, recently reaffirming that "an implied waiver covers only the extent and context of the condition and the subsequent damages that form the basis of the claim for relief; it does not amount to a general disclosure of the patient's entire relationship with the physician in question."  *Bailey v. Hermacinski*, 413 P.3d 157, 163 (Colo. 2018).

patient "privilege does not generally apply to names, phone numbers, and other identifying information, because doctors do not need that information to prescribe or act on behalf of patients").[8]

Accordingly, for the reasons stated herein, this court **GRANTS** Defendant's Motion to Compel, and **ORDERS** Plaintiff to produce nonprivileged documents in response to Request Nos. 1 and 2, no later than **July 26, 2019**. This court further **DENIES** Plaintiff's Motion to Quash as to the subpoena directed at Marrick and **DENIES as MOOT** Plaintiff's Motion to Quash as to the subpoena directed at Dr. Masri and **ORDERS** that Marrick respond to the subpoena no later than **July 26, 2019**. Given Marrick's lack of appearance in this action, the court further **ORDERS** Defendant to provide a copy of this Order, along with the subpoena, to Marrick no later than **July 22, 2019**.

## II.    Defendant's Motion for IME

State Farm also moves to compel Ms. Anchondo-Galaviz to submit to an IME to "to determine whether Plaintiff was injured in the accident, whether Plaintiff's alleged ongoing symptoms are related to the accident, whether Plaintiff's treatment has been reasonable and necessary, and whether Plaintiff will require a lifetime of future treatment related to this accident," in part because Plaintiff's expert disclosures reveal opinions that Plaintiff will be required to treat every 8-12 months for the remainder of her life based on her claimed injuries to her neck and back.

---

[8] It is not entirely clear whether Plaintiff separately and continues to object to the disclosure of her unrelated medical history to Dr. Masri, given the Parties' Stipulation with respect to Dr. Masri. *Compare* [#38 at 4] *with* [#53]. To the extent that Plaintiff objects to the production of medical records reflecting her history provided to Dr. Masri, this court notes that the expert disclosure for Dr. Masri anticipates that he is expected to testify as to Plaintiff's medical history. [#30-1 at 5]. Accordingly, any objection to the production of such medical history is not persuasive.

[#30 at 2, 5]. Plaintiff contends that she is not required to submit to an IME based on *Schultz v. GEICO*, 429 P.3d 844, 846 (2018), because State Farm could have, but did not, seek a medical examination during the adjustment of the claim. [#34]. Plaintiff also urged this court to find that any information regarding Ms. Anchondo-Galaviz's medical treatment and cost of such treatment is not relevant because State Farm did not contest the appropriateness of her care during the adjustment process and breached the contract in 2016 and 2017, when it failed to provide the UIM benefits, and State Farm cannot now essentially backfill its deficient investigation with evidence acquired through litigation. [*Id.* at 7].

Rule 35 of the Federal Rules of Civil Procedure provides that a court may order an IME of a party where the party's mental or physical condition "is in controversy." Fed. R. Civ. P. 35. Rule 35 requires an affirmative showing by the moving party that each condition as to which the examination is sought is really and genuinely in controversy and good cause exists for ordering each particular examination. *See Schlangenhauf v. Holder*, 379 U.S. 104, 118 (1964). "Good cause" indicates that the showing is more than mere relevance and is not merely a formality. *Id.* Rather, the court weighs the need for information against the individual's right to privacy. *Id.* The decision to grant or deny a Rule 35 examination is committed to the sound discretion of the court. *See Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 362 (D. Colo. 2004). Because the "in controversy" and the "good cause" requirements often implicate the same factors, the court may consider both issues together. *Id.* "While Rule 35 should be construed liberally in favor of granting discovery, its application is left to the sound discretion of the court." *Id.* (internal citations omitted); *see also Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 322 (N.D. Ga. 2000) (noting

that the "factors reviewed in determining 'good cause' often merge with those requirements necessary to find that a plaintiff's mental condition is 'in controversy'").

This court finds *Schultz* distinguishable because in that case the plaintiff's physical condition was no longer at issue—the only remaining issue was whether the benefits paid to the plaintiff were unduly delayed. 429 P.3d at 844. There can be no dispute that Ms. Anchondo-Galaviz's physical condition remains in controversy, in particular her neck and spine, because she continues to claim that State Farm breached its insurance contract with her by failing to pay her UIM benefits. And though Ms. Anchondo-Galaviz argues that the breach of contract occurred in 2016 and 2017 based on all pre-suit information, she unequivocally seeks damages for future treatment and impairment, based in part on expert disclosures made on February 15, 2019 that refer to treatment received by Plaintiff after 2017. [#30-1]. For instance, Dr. Masri did not see Plaintiff until October 31, 2017, but intends to testify about a follow-up appointment that he had with Plaintiff on February 19, 2018, April 12, 2018, June 11, 2018, July 9, 2018, August 16, 2018, October 10, 2018, and November 26, 2018. [*Id.* at 6–7]. This court is not persuaded by Plaintiff's argument made in oral argument that Defendant could have necessarily discerned from the information before it in 2016 and 2017 that she would need continued lifetime treatment from the information before the insurer at that time.

In addition, Plaintiff cites no law, nor did the court independently find any, that supports the proposition that an insurer waives the right to pursue an independent medical examination in the context of litigation by failing to pursue a medical examination during the adjustment of a claim, when a plaintiff's physical condition remains at issue. Other courts within the Tenth Circuit have expressly rejected such a finding. *Morrison v. Chartis Prop. Cas., Co.*, No. 13-CV-116-JED-

PJC, 2014 WL 1323743, at *2 (N.D. Okla. Apr. 1, 2014). *Cf. Ligotti v. Provident Life & Cas. Ins. Co.*, 857 F. Supp. 2d 307, 318–19 (W.D.N.Y. 2011) (rejecting the plaintiff's argument that the defendant waived its right to seek a Rule 35 IME because it did not request one before denying the plaintiff's claim for disability benefits). Accordingly, this court finds that an IME pursuant to Rule 35 is appropriate.

As both Parties acknowledge, Rule 35 also requires the court order must specify the time, place, manner, conditions and scope of the examination as well as the person or persons who will perform it. Fed. R. Civ. P. 35(a). This information is not before the court, and this court declines Defendant's invitation to forego these requirements and simply order the examination. Accordingly, while the court **GRANTS** Defendant's Motion for IME, it **ORDERS** that the Parties meet and confer and no later than **July 26, 2019**, file a Notice with the court, specifying the time, place, manner, conditions and scope of examination as well as the person or person who will perform it, so that the court can issue an order complying with Rule 35. To the extent that the Parties cannot agree, the Parties shall submit a Status Report no later than July 26, 2019, outlining the stipulated and disputed elements, and any arguments by the Parties supporting their respective positions, so that the court may enter a compliant order as soon as is practicable. The court further **GRANTS** Defendant's Motion for Extension of Time to File Expert Disclosures up to and including **August 9, 2019**. **Defendant should anticipate making its expert available for deposition before August 16, 2019, the close of discovery**.

### III.  Remaining Motions

There remain four additional motions pending before the undersigned which are properly considered here to ensure that this case proceeds efficiently and expeditiously, though some have not been fully briefed.  Fed. R. Civ. P. 1; D.C.COLO.LCivR 7.1(d).

#### A.  State Farm Manual

Plaintiff's Motion for Disclosure [#61; #62] is before the court pursuant to the Memorandum dated June 26, 2019 [#63].  Also before the court is Defendant's related Motion to Restrict [#71] before the court pursuant to the Memorandum dated July 15, 2019 [#72].  Both motions concern whether Defendant has properly designated a lengthy summary and 'user manual' of Colorado law used to train its employees as Confidential under the Protective Order [#27].  *See* [#61, #71].  Plaintiff argues that these documents are merely summaries of Colorado law and therefore their exposure cannot harm Defendant, who counters that it has expended substantial time and effort to create this summary to assist its representatives in applying Colorado law in the course of their duties.  [#69, #71].  Accordingly, Defendant seeks to restrict [#61-1 through #61-16 and #70].  [#71 at 6].

This court is guided by two reference points:  the Federal Rules of Civil Procedure and the Protective Order entered by Judge Matsch in this action.  Rule 26(c) provides that a court may issue a protective order for good cause to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense."  To show good cause, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to the party seeking protection."  *Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002).  The Protective Order, that was stipulated to by the Parties and entered by Judge Matsch, provides that

"certain information and documents that contain confidential, proprietary, or trade secret information … may be subject to discovery in this action, but … should not be made publicly available."  [*Id*. at ¶ A].  The court finds that although the documents at issue reflect publicly available law and regulations, they are undisputedly maintained as confidential and not publicly available.  [#69-1].  In addition, given the time and resources invested in their development, and that the document reflects the training provided from State Farm to its employees, the documents have independent value .  [*Id.*].  And while this court may be skeptical that these materials do, in fact, constitute cognizable trade secrets (even in compilation format), the court notes that neither the Federal Rules of Civil Procedure nor the entered Protective Order requires them to be trade secret in order to qualify for the designation of Confidential under the Protective Order. *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). Accordingly, the court finds the designation proper and **DENIES** Plaintiff's Motion for Disclosure [#57, #62] and thus **GRANTS** Defendant's Motion to Restrict [#71].

### B.    Defendant's Response to the Motion for Summary Judgment

Also before the court is a motion by Defendant seeking leave to amend prior its Response [#44] to the pending Motion for Summary Judgment to comply with Judge Kane's Practice Standards which is before the court pursuant to the Memorandum dated July 15, 2019 [#72].  [#67]. Specifically, Defendant seeks to add a Response to a Statement of Undisputed Facts.  [*Id.* at 2]. Given the upcoming oral argument, this court proceeds without a further response by Plaintiff who indicates opposition.

Although this court notes that this matter proceeded before Judge Matsch when the Motion for Summary Judgment was filed [#39], Plaintiff did in fact, include a Statement of Undisputed

Facts within her affirmative Motion for Summary Judgment.  [*Id.* at 1-5].  Having declined to respond to each assertion that is clearly set forth there, this court declines to permit Defendant to amend its Response to do something it clearly could have done in the first instance, regardless of the Practice Standards of the presiding judicial officer.   Accordingly, this court **DENIES** Defendant's Motion to Amend Response.

The court next turns to the Motion to Supplement the Response in which Defendant seeks to amend its Response to the Motion for Summary Judgment to include reference to one previously unavailable exhibit, and one "which was not believed to be necessary."  [#68 at 1].  The exhibits Defendant seeks to add the transcript of the Scheduling Conference that State Farm argues reflects a binding ruling by Judge Matsch that certain attorney correspondence making a claim or containing an opinion would be redacted.  [*Id.* at 2].  The second includes deposition testimony taken from State Farm's Rule 30(b)(6) designee which occurred after the filing of the Reply on the Motion for Summary Judgment.

First, without passing on whether Judge Matsch's statements during the Scheduling Conference amount to a binding ruling that certain attorney statements and opinions are inadmissible, this court finds that the supplementation of the summary judgment record with the transcript of the Scheduling Conference is appropriate.  However, the court may take judicial notice of the transcript [#58], and need not permit Defendant to amend its Response to introduce new arguments with respect to Judge Matsch's statements.  Indeed, to allow such amendment to the Response simply invites further arguments (and perhaps arguments about the arguments) between the Parties in this already contentious case.

Second, to the extent that State Farm seeks to introduce testimony from its own Rule 30(b)(6) deponent in Response to the Motion for Summary Judgment, it fails to establish good cause as to why the same testimony could not have been provided in conjunction with its Response pursuant to a Declaration or Affidavit as contemplated by Rule 56(c) of the Federal Rules of Civil Procedure. This is not a circumstance, contrary Defendant's argument, that the substantive testimony was not available to it prior to the Rule 30(b)(6) deposition. The deponent, Steve Schmelzer, testified that he was currently employed by State Farm, and State Farm affirmatively designated him as its corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. [#68-2]. Given that access to Mr. Schmelzer, State Farm could, and should have, introduced any testimony from him to oppose Plaintiff's Motion for Summary Judgment within its original Response, which was filed on May 6, 2019 – a little more than two weeks prior to Mr. Schmelzer's deposition. *Compare* [#44] *with* [#68-2]. Accordingly, this court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Supplement.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    Motion to Compel Discovery Responses by Defendant State Farm Mutual Automobile Insurance Company [#29] is **GRANTED** and Plaintiff shall supplement her responses to Request for Production Nos. 1 and 2 no later than **July 26, 2019**;

(2)    Defendant's Motion to Compel Rule 35 Examination [#30] is **GRANTED.** The Parties shall meet and confer and file no later than **July 26, 2019** either a Notice or Joint Status Report regarding the time, place, provider, and scope of the Rule 35 Examination, with any disputes identified;

(3)    Defendant's Motion for Extension of Time to File Expert Disclosures Pending an Order on State Farm's Motion to Compel a Rule 35 Examination [#31] is **GRANTED** and the deadline for Defendant's expert disclosures dependent upon Plaintiff's IME is extended up to and including **August 9, 2019**; and

(4)    Plaintiff's Motion to Quash Subpoena Duces Tecum Served on Marrick Medical and the Subpoena Duces Tecum Served on Vanston Masri, M.D. [sic] **GRANTED IN PART and DENIED AS MOOT IN PART** [#38, filed April 11, 2019]. Marrick will provide responses to the subpoena no later than July 26, 2019, and Defendant will provide a copy of this Order to Marrick, along with a copy of the subpoena, no later than **July 22, 2019**;

(5) Plaintiff's Motion for Disclosure [#57] is **DENIED as MOOT.** Plaintiff's Motion for Disclosure [#61, #62] is **DENIED**;

(6) Defendant's Motion to Restrict [#71] is **GRANTED** and the Clerk of the Court is **DIRECTED to MAINTAIN** as Level 1 Restricted the following docket entries: [#61-1 to #61-16] (inclusive) and [#70]. The Clerk of the Court is **DIRECTED to UNRESTRICT** [#61];

(7) Defendant State Farm Mutual Automobile Insurance Company's Motion for Leave to File an Amended Response to Plaintiff's Motion for Summary Judgment to Comply With the Court's Pretrial Procedures [#67] is **DENIED**; and

(8) Defendant State Farm Mutual Automobile Insurance Company's Motion for Leave to File an Amended Response to Plaintiff's Motion for Summary Judgment to Include References to Previously Unavailable Exhibits [#68] is **GRANTED IN PART and DENIED IN PART**. If appropriate, the court may take judicial notice of the transcript of the Scheduling Conference before the Honorable Richard P. Matsch [#58].

DATED: July 19, 2019                                          BY THE COURT:

Nina Y. Wang
United States Magistrate Judge