**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-01322-JLK-NYW

ABRIL ANCHONDO-GALAVIZ,

    Plaintiff,

 v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

**OPINION AND ORDER ON PRETRIAL MOTIONS**

Kane, J.

    This civil action arises out of an insurance dispute between Plaintiff Abril Anchondo-Galaviz and her insurer, Defendant State Farm Automobile Insurance Company, regarding her first-party claim for underinsured motorist ("UIM") benefits following an automobile collision on February 27, 2013. Initially, the presiding judge was Judge Richard P. Matsch; I consider his findings sound and abide by them in this Order. The nature of the dispute has been clearly set out in the Recommendation of Magistrate Judge Wang denying Ms. Anchondo-Galaviz's Motion for Summary Judgment. (ECF No. 130 at 1-2).

    Presently before me are the parties' pretrial motions: three from each party. Undergirding these contentious motions are the persistent efforts of the attorneys to vilify their opponents. After considering the motions in full, I am granting one of Ms. Anchondo-Galaviz's motions in part, granting one of State Farm's motions, and ordering a *Daubert* hearing.

1

## MS. ANCHONDO-GALAVIZ'S MOTIONS

### I. Motion to Preclude Evidence of Collateral Source Benefits such as Medical Insurance or Financial Lien Companies (ECF No. 151)

Ms. Anchondo-Galaviz contracted a financial lien company, Marrick Medical, to fund her medical care, agreeing that she would eventually reimburse Marrick the full amount her providers billed for her treatments. With her Motion to Preclude Evidence of Collateral Source Benefits, Ms. Anchondo-Galaviz asks me to find that Marrick is a collateral source and, as such, to preclude any evidence of its involvement in her case at trial. State Farm intends to submit evidence of Marrick's involvement because it alleges it will reveal "Plaintiff's attorneys had control over [Ms. Anchondo-Galaviz's] medical care." (ECF No. 153 at 1). Whether that is true or not, I agree with State Farm that medical lien companies are not collateral sources. I find, however, that evidence of the discounted amounts paid by Marrick should be excluded from evidence pursuant to Federal Rule of Evidence 403.

The common law Collateral Source Rule ensures that it is solely the tortfeasor's responsibility to make an injured plaintiff whole. *Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo. 2010). It consists of two components: a pre-verdict evidentiary component, and a post-verdict contract exception which has been codified by Colorado Revised Statutes § 13-21-111.6. *Sunahara v. State Farm Mutual Auto. Ins. Co.*, 280 P.3d 649, 654 (Colo. 2012). In 2010, the Colorado legislature amended the post-verdict contract exception, but specifically stated that the common law pre-verdict component remained unchanged. Colo. Rev. Stat. § 10-1-135(10)(a). At issue here is the pre-verdict component.

The evidentiary rule is applied when a third party compensates or indemnifies a plaintiff. In that situation, the benefits conferred by that third party are collateral to the issue of the tortfeasor's liability and therefore inadmissible at trial. *Gardenswartz*, 242 P.3d at 1083. The rule

ensures that a plaintiff's damages are not reduced "on the grounds that the plaintiff already recovered his loss from a collateral source," *Sunahara*, 280 P.3d at 654. Protection under the pre-verdict component is sweeping: amounts paid evidence is inadmissible for any purpose in a collateral source case. *Wal-Mart Stores, Inc. v. Crossgrove*, 276 P.3d 562, 567 (Colo. 2012). There is steady judicial consensus that the pre-verdict introduction of such evidence carries a significant danger of unfair prejudice. *Smith v. Jeppsen*, 277 P.3d 224, 228 (Colo. 2012).

Ms. Anchondo-Galaviz argues that Marrick is a collateral source and so evidence regarding its involvement and the discounted payments it has made for her medical treatment should not be permitted at trial. "A collateral source is a person or company, wholly independent of an alleged tortfeasor, that compensates an injured party for that person's injuries." *See Smith*, 277 P.3d at 228 (citation omitted).

The agreement between Marrick and Ms. Anchondo-Galaviz makes it abundantly clear, however, that Ms. Anchondo-Galaviz is not compensated, indemnified, or allowed to recover her medical expenses:

> [Plaintiff] understands, acknowledges and agrees that this agreement is the only consideration that Marrick receives for its purchase and conditional forbearance of collection of Medical Bills; that Marrick is not an insurance company and does not charge or collect premiums or finance charges; that Marrick is not a payer of benefits under Section 10-1-135, Colorado Revised Statutes. [Plaintiff] also understands, acknowledges and agrees that this agreement will not be subject to any common law "make-whole" doctrine. Marrick's right to receive payment is absolute and not contingent or in any way dependent upon any particular settlement, verdict or judgment or upon [Plaintiff's] recovery of full compensation for… her injuries.

(ECF 142-4 at 2, § 6). Marrick simply purchased Ms. Anchondo-Galaviz's medical debt, and she remains contractually obligated to Marrick for the full value of her medical bills. In that fashion,

3

Marrick has become Ms. Anchondo-Galaviz's creditor, and not a collateral source conferring a benefit on her.

The Collateral Source Rule applies to plaintiffs who are going to be indemnified or compensated in some manner, and Marrick offers no such benefit to Ms. Anchondo-Galaviz. Thus, evidence regarding Marrick's relationship with Ms. Anchondo-Galaviz and her providers is not barred by that Rule. To be admissible, however, the evidence must overcome other hurdles. First, only relevant evidence is admissible. *See* Fed. R. Evid. 402. And, second, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

While I agree that evidence of the amount Marrick paid for the medical services procured by Ms. Anchondo-Galaviz could be relevant as evidence of the reasonable value of those services, *see Kendall v. Hargrave*, 349 P.2d 993, 994 (Colo. 1960), I find that the amounts-paid evidence under the circumstances presented here should be excluded pursuant to Federal Rule of Evidence 403. In light of the fact that Ms. Anchondo-Galaviz remains fully liable for the medical services she received, any probative value of the amounts-paid evidence is greatly outweighed by its potential to cause unfair prejudice and confuse or mislead the jury in the same way that evidence of collateral benefits are "readily subject to misuse by a jury." *Sunahara*, 280 P.3d at 654 (quoting *Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 254-55 (1963)).

In sum, the Motion to Preclude Evidence of Collateral Source Benefits is denied insofar as it relates to Marrick Medical or any financial lien company. Evidence of the amounts paid by Marrick will, however, be excluded from trial. The motion is granted as to Ms. Anchondo-Galaviz's health insurance; that issue is unopposed by State Farm. (ECF No. 151 at 1).

## II. Motion to Exclude Reference to the Damages Award Under C.R.S. § 10-3-1116(1) (ECF No. 165)

Ms. Anchondo-Galaviz also moves to exclude any reference to the statutory damages she seeks under Colorado Revised Statutes § 10-3-1116(1). That statute permits a first-party claimant, like Ms. Anchondo-Galaviz, to bring an action for two times the covered benefit as well as reasonable attorney fees and court costs when her claim for payment of benefits has been unreasonably delayed or denied. She argues that the availability of such statutory damages should not be mentioned to the jury, because it "does not have any probative value on the issue of whether State Farm unreasonably delayed or denied payment of the covered benefit." (ECF No. 165 at 4). State Farm's defense to her claim alleging unreasonable delay or denial is that Ms. Anchondo-Galaviz and her agents manufactured delays and obstructed State Farm's efforts because they were motivated by the statutory damages. The existence of and content of the statutory award provision is therefore relevant and has probative value for State Farm's defense. Any potential prejudice to Ms. Anchondo-Galaviz can be addressed in the instructions and explanations provided to the jury. Consequently, the motion is denied.

## III. Motion to Exclude Reference of *Harris v. Allstate*, *Windhorst v. State Farm*, or Plaintiff's Counsel being Sanctioned in Those Cases (ECF No. 164)

Ms. Anchondo-Galaviz is represented by attorneys from the Bendinelli Law Firm, P.C., including Marco Frank Bendinelli. On multiple occasions, State Farm has referenced the Bendinelli firm's past behavior to establish that Mr. Bendinelli has experience manufacturing unreasonable delay by insurers under similar circumstances. Counsel for State Farm has repeatedly referred to Mr. Bendinelli as having been "sanctioned" in *Harris v. Allstate Ins. Co.*, No. 09-cv-01953-LTP-MJW, 2010 WL 2543560 (D. Colo. June 22, 2010) and *Windhorst v.*

*State Farm Mut. Auto. Ins. Co.*, No. 11CA1045, 2012 WL 1884652 (Colo. App. May 24, 2012), despite Judge Matsch's recriminations for their misrepresenting the outcome in those cases. Ms. Anchondo-Galaviz now requests that I prohibit State Farm from making any reference at trial to her counsel having been previously sanctioned.

    Mr. Bendinelli's experience and past actions are relevant to State Farm's assertion that Mr. Bendinelli knows how to draw out the claims process and that he has employed similar delay tactics previously. By way of example, State Farm alleges that it requested an authorization for release of medical records from Ms. Anchondo-Galaviz in January 2014, and it was never provided. (ECF No. 1-5 at 7). The same refusal to execute an authorization was at issue in both *Windhorst* and *Harris*.

In *Harris*, summary judgment was granted to the insurer when Mr. Bendinelli's client "failed to satisfy the conditions precedent to coverage" by not executing an authorization form, among other failings. *Harris*, 2010 WL 2543560, at *4. In *Windhorst*, the court found that Mr. Bendinelli violated Rule 11, and it therefore awarded attorney fees to the insurer, writing "the Court concludes that plaintiff's claims against State Farm were prosecuted by her counsel in bad faith." Order on Att'y Fees at 10-12, *Windhorst*, No. 09-cv-1216 (Dist. Ct. Adams Cnty. June 28, 2011), ECF No. 122-6. Mr. Bendinelli was not, however, "sanctioned," as State Farm has suggested at least three times, and Ms. Anchondo-Galaviz is prejudiced by the inaccurate portrayal of her attorney's history.

Thus, the motion is granted in part as any reference to Ms. Anchondo-Galaviz's counsel being "sanctioned" is prohibited. The motion, however, is denied without prejudice regarding reference to Mr. Bendinelli's involvement in or the outcome of *Harris v. Allstate* or *Windhorst v.*

*State Farm*. If, at trial, issues concerning prior cases are again raised by either or both parties, a ruling will be made at that time. I caution all counsel to approach such issues with extreme care.

## STATE FARM'S MOTIONS

### IV. Motion *in Limine* Regarding the Medical Opinions and Studies Provided by Plaintiff's Counsel (ECF No. 138)

State Farm moves to preclude Ms. Anchondo-Galaviz "from presenting to the jury undisclosed and unfounded expert opinions via a letter from her attorney, through arguments of counsel, through questioning of witnesses intended to suggest these opinions exist and are valid, and by introducing an unrelated, preliminary medical study at trial." (ECF No. 138 at 6). This dispute involves the reasonableness and appropriateness of Ms. Anchondo-Galaviz's past and future radiofrequency ablation procedures, or RFAs. The ablations were first administered to Plaintiff on September 17, 2015, and first reported to State Farm by means of a May 2, 2016 demand letter. (ECF No. 141-1 at 2-15). On August 1, 2016, Mr. Bendinelli's son, and an attorney at the firm, sent a letter to State Farm mentioning that ablations may need to be repeated "indefinitely." (ECF No. 141-1 at 22). He attached a copy of an article from the Journal of Korean Neurological Society entitled "The Efficacy of Repeated Radiofrequency Medial Branch Neurotomy for Lumbar Facet Syndrome." State Farm has filed this motion to restrict all mention of and reliance upon the unfounded expert opinions of Ms. Anchondo-Galaviz's attorney, or the medical article.

State Farm's motion is based on the following arguments: (1) the letter and article constitute inadmissible hearsay; (2) counsel's opinions are impermissible expert testimony; and (3) the article is not connected to Ms. Anchondo-Galaviz and has been mischaracterized. State Farm is supported in its claims because Judge Matsch indicated that he would redact any

evidence of counsel's opinions. (ECF No. 115-3 at 14 ("To the extent it's making a claim, I redact it.")).

Specifically, Mr. Bendinelli, Jr. wrote:

> In this evaluation, did State Farm consider that the Radiofrequency procedure that Ms. Anchondo underwent is suggested to be repeated every 10 to 18 months? Depending on the school of thought, the medical literature suggests that, depending on the patient, these procedures are needed to be repeated indefinitely. Kindly find attached an authoritative article on the Efficiency of Radiofrequency Medical Branch Neurotomy for Lumbar Facet Syndrome.

(ECF No. 138-1). State Farm's arguments are persuasive. Mr. Bendinelli, Jr. has no medical expertise, is not subject to cross-examination, and there is a valid concern of misleading the jury. *See* Fed. R. Evid. 403, 702, 801. The letter makes bold assertions, albeit partially couched in the form of a question. Additionally, Mr. Bendinelli Jr. mischaracterizes the article's findings.

I abide by Judge Matsch's finding that the August 1, 2016 claims of the attorney should be redacted. The relevant paragraph can easily be redacted to read: "In this evaluation, did State Farm consider . . . the Radiofrequency procedure that Ms. Anchondo underwent?"

The article is prohibited in its entirety. Though it is not long or difficult to understand, it has neither been proffered by a physician in the context of Ms. Anchondo-Galaviz's treatment nor in the context of expert testimony. Based on those rulings, State Farm's motion is granted.

### V.      Motion to Strike the Opinions of Mark Guilford Pursuant to Fed. R. Evid. 702 (ECF No. 142)

Ms. Anchondo-Galaviz has retained Mark Guilford as an expert regarding the reasonable cost of medical care. Mr. Guilford is the CEO of AccuMed HealthCare Research, LLC, a data analytics company. State Farm objects to Mr. Guilford's expertise, arguing that his methodology is faulty because (1) he only considered charges to Medicare beneficiaries and (2) his assessment

of the "reasonable value" of a medical service is based on unsatisfactory standard. Namely, State Farm is not satisfied by (a) Mr. Guilford's reliance on the "usual charge for a procedure" because it is not risk adjusted and (b) Mr. Guilford's assessment that a "customary" charge is a charge that falls within the 80th percentile.

In its Motion and Reply, State Farm seems to misunderstand Mr. Guilford's sources, reports, and methodologies. Mr. Guilford's report is admittedly difficult to understand. While I find State Farm's arguments to be misplaced, a *Daubert* hearing is necessary to consider whether Mr. Guilford's technique is scientifically valid and properly applied to the facts of this case. Additionally, State Farm may have more success framing its arguments after having reviewed the Sur-Reply. Ms. Anchondo-Galaviz may decide to withdraw Mr. Guilford as a witness because of my ruling in Section I excluding evidence of the amounts paid by Marrick Medical. If so, counsel should notify the court so that a *Daubert* hearing will not be required.

### VI. Motion to Preclude the Introduction of Testimony Regarding Claim Specialist Tanaka's Deposition Relating Solely to Medical Payments Coverage Claims (ECF No. 166/167)

Lastly, State Farm moves to preclude evidence of Claims Specialist Sheryl Tanaka's deposition testimony regarding its handling of Medical Payments Coverage (MPC) claims on the basis that it could mislead the jury. As Ms. Anchondo-Galaviz has not yet designated portions of Ms. Tanaka's deposition as testimony, I find this motion premature. The motion is denied without prejudice.

### CONCLUSION

Accordingly, Ms. Anchondo-Galaviz's motion to preclude evidence of involvement by a medical financial lien company pursuant to the Collateral Source Rule (ECF No. 151) is

DENIED IN PART; her motion to exclude reference to statutory damages (ECF No. 165) is DENIED; and her motion to exclude reference to her counsel being sanctioned in previous cases (ECF No. 164) is GRANTED IN PART. State Farm's motion to restrict counsel's non-expert medical opinions (ECF No. 138) is GRANTED, and its motion to preclude testimony of Claim Specialist Tanaka (ECF No. 167) is DENIED WITHOUT PREJUDICE. Finally, the court will set a *Daubert* hearing regarding the pending motion to exclude expert testimony (ECF No. 142). The parties are directed to email chambers jointly at Kane_Chambers@cod.uscourts.gov on or before February 19, 2021 with at least three mutually agreed upon dates and times for a hearing to be held during the first two weeks of March.[1] The parties are also ORDERED to jointly update their proposed jury instructions, then to file in CM/ECF and email a copy in editable format to on or before March 2, 2021. In doing so, they are directed to state their legal support and objections with specificity, particularly in relation to proposed instruction no. 3.7.

DATED this 8th day of February, 2021.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

---

[1] I would like for the hearing to be set in this timeframe, since this case is scheduled for a jury trial starting April 19, 2021. The trial date is firmly set in this court's calendar, although I recognize that court-wide orders may enter striking the trial date should the COVID-19 pandemic require.